**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

JARON STEPHENSON, on behalf of himself and all others similarly situated,

Plaintiff,

-v-

OURARING, INC.,

Defendant.

-------------------------------------------------------------x

DOCKET NO.

**CLASS ACTION <u>COMPLAINT</u>**

**DEMAND FOR JURY TRIAL**

Plaintiff, JARON STEPHENSON ("Plaintiff" or "Mr. Stephenson"), individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), by and through his undersigned counsel, Robert Schonfeld, Esq. of JOSEPH & NORINSBERG, LLC, brings this putative Class Action against Ouraring Inc. ("Oura Ring" or "Defendant") for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, arising from Defendant's failure to ensure that its e-commerce Website, www.ouraring.com is accessible to blind and visually impaired individuals.

## INTRODUCTION

1. Plaintiff Jaron Stevenson is a legally blind resident of New York County, New York, who relies on screen-reading software including JAWS, NVDA and Voiceover to access websites and complete online transactions. Defendant. Ouraring, Inc. is a consumer technology company that designs, manufacturers, markets and sells the Oura Ring of smart wearable health-monitoring device directly to consumers through its commercial website, www.ouraring.com. Defendant also requires every Oura Ring purchaser to subscribe to the Oura Membership, a mandatory paid subscription service, ($5.99 per month or $69.99 per year) to access the rings core health-monitoring features and manages that Membership exclusively through the same website. Mr. Stevenson brings

this action because Defendant has failed to make www.ouraring.com accessible to blind and visually impaired consumers, denying them. Equal access to both the ordering product and the mandatory Membership service that makes its functional in violation of the Americans with Disabilities Act, the New York State Human Rights Law, the New York Civil Rights Law, and the New York City Human Rights Law.

2. Plaintiff files this Complaint to address developments that occurred after the commencement of this action. Plaintiff originally sought to purchase the Oura Ring Gen 3 Horizon through Defendant's website, www.ouraring.com, but was denied equal access by persistent accessibility barriers. Defendant thereafter discontinued the Gen 3 Horizon and now sells only its successor, the Oura Ring 4 ("Gen 4"), through the same website. The accessibility barriers on www.ouraring.com have not been remediated and, as reflected in the newly obtained accessibility validation report, remain pervasive across the current website and current Gen 4 product pages. Moreover, Defendant requires every Oura Ring purchaser to subscribe to the Oura Membership — a mandatory paid subscription service ($5.99 per month or $69.99 per year) — in order to access the ring's core health-monitoring features, including detailed sleep staging, heart rate variability analysis, blood oxygen monitoring, and stress assessment. The Membership is activated, managed, and canceled exclusively through the same inaccessible website, meaning the accessibility barriers deny blind consumers access not only to the product but to the mandatory service that makes the product functional.

3. Defendant owns and operates www.ouraring.com, through which it markets, advertises, and sells Oura Ring products directly to consumers nationwide, including consumers in New York. The website is Defendant's direct-to-consumer sales channel for current ring products, including the Oura Ring 4 pages identified in the accessibility validation report for finishes such as black, brushed silver, gold, rose gold, silver, stealth, ceramic cloud, ceramic midnight, ceramic

petal, and ceramic tide. The website also serves as the exclusive portal through which consumers subscribe to, activate, manage, and cancel the Oura Membership — a paid subscription that Defendant requires for access to the Oura Ring's core health-monitoring functionality.

4. This Complaint therefore addresses three related harms. First, Plaintiff lost the opportunity to purchase the now-discontinued Oura Ring Gen 3 Horizon because Defendant maintained an inaccessible website during the period when that product was offered for sale. Second, Plaintiff continues to be denied equal access to the currently sold Oura Ring 4 because the same types of barriers—and additional barriers identified in the current accessibility validation report—still block him from independently researching, evaluating, configuring, and purchasing Defendant's product. Third, Plaintiff has been and continues to be denied equal access to the mandatory Oura Membership service — the paid subscription that Defendant requires for consumers to use the health-monitoring features of any Oura Ring — because that service is managed exclusively through the inaccessible website.

5. Plaintiff seeks damages arising from his lost opportunity to purchase the discontinued Horizon, as well as damages, declaratory relief, and injunctive relief directed to Defendant's ongoing exclusionary operation of www.ouraring.com the currently sold Gen 4 product pages, and the mandatory Oura Membership subscription service that Defendant requires for full use of its products.

## THE PARTIES

5. Plaintiff JARON STEPHENSON is a resident of New York County, New York. He is legally blind and visually impaired and relies on screen-reading software, including JAWS, NVDA, and VoiceOver, to access websites, read digital text, navigate menus, interact with forms, and complete online transactions.

6. Plaintiff lives with Cone Rod Dystrophy, a progressive retinal condition that impairs

both central and peripheral vision. He also lives with Type 1 Diabetes. Because he cannot perceive visual website content without accessible coding, he depends on websites to provide meaningful alternative text, properly labeled controls, accurate semantic structure, keyboard-operable tools, and usable forms in order to browse and complete purchases independently.

7. Upon information and belief, Defendant OURARING, INC. is a Delaware corporation that owns, controls, operates, and/or maintains www.ouraring.com and sells Oura Ring products directly to consumers through that website.

8. Defendant also requires consumers to subscribe to the Oura Membership — a paid service managed exclusively through www.ouraring.com — in order to access the health-monitoring features of the Oura Ring.

**JURISDICTION AND VENUE**

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under federal law, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

9. This Court has supplemental jurisdiction over Plaintiff’s state and local law claims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy as Plaintiff's federal claims.1367.

10. Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiff resides in this District, encountered the discriminatory barriers in this District, and Defendant conducts substantial business in this District through its website.

11. Defendant is subject to personal jurisdiction in this District because Defendant, through its Website, transacts substantial business in New York, maintains commercial websites accessible to and actively marketed at New York residents, ships products to customers in New York, and has derived substantial revenue from consumers in the State and City of New York. See

*Reed v. 1-800-Flowers.com, Inc.,* 327 F. Supp. 3d 539 (E.D.N.Y. 2018); *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Romero v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

## NATURE OF ACTION

11. This action challenges Defendant's operation of a commercial website that denies blind and visually impaired individuals full and equal access to Defendant's goods, services, privileges, and advantages. Plaintiff attempted to use Defendant's website to research and purchase specific Oura Ring products but encountered accessibility barriers that prevented him from independently obtaining product information, using purchasing tools, completing a transaction, and subscribing to the mandatory Oura Membership service.

12. The Internet is a critical tool for shopping, researching products, comparing features, managing subscriptions, and completing purchases. Blind and visually impaired individuals can access such information only when websites are coded to work with screen-reading technology and keyboard navigation.

13. The Web Content Accessibility Guidelines ("WCAG") 2.1 establish recognized standards for digital accessibility. The current accessibility validation report for www.ouraring.com identifies widespread WCAG failures on current pages, including the Gen 4 ring product pages and related shopping functionality. Those failures include, among many others, videos that play longer than five seconds without a way to pause, image alternative text errors, focusable content hidden from assistive technology, empty headings, form controls without accessible names, links without accessible names, iframe elements without title attributes, generic link text such as "Learn More," and repeated link text leading to different destinations.

## STATEMENT OF FACTS

14. Plaintiff's injury is concrete, particularized, and ongoing. Plaintiff visited

www.ouraring.com to research and purchase Defendant's smart ring products for personal health and wellness monitoring. Because Plaintiff is blind and uses screen-reading software, he depends on accessible labels, headings, links, forms, and interactive controls in order to understand product information, operate sizing and selection tools, and complete checkout. Plaintiff also sought to subscribe to the mandatory Oura Membership service — the paid subscription required to access the ring's health-monitoring features — which is managed exclusively through the same inaccessible website.

15. Before Defendant discontinued the Oura Ring Gen 3 Horizon, Plaintiff visited the website on multiple occasions intending to purchase that product. He attempted to review the Horizon's specifications, compare finishes, evaluate subscription options, and complete checkout, but was obstructed by inaccessible website elements, including unlabeled form fields, inaccessible modal dialogs, non-descriptive links, and other barriers that prevented him from confirming product details and completing the transaction. Before those barriers were remediated, Defendant discontinued the Horizon, thereby depriving Plaintiff of the opportunity to buy the product he specifically sought. Plaintiff was also denied the opportunity to subscribe to and benefit from the mandatory Oura Membership service that would have accompanied his Horizon purchase.

16. Plaintiff also has standing as to the currently sold Oura Ring 4. On February 6, 2026, March 14, 2026, and March 30, 2026, Plaintiff returned to www.ouraring.com with the specific intent to research, configure, and purchase the Oura Ring 4 and subscribe to the accompanying Oura Membership service. During those visits, Plaintiff attempted to access the current Gen 4 product pages, review product descriptions and finishes, use the sizing and selection tools necessary to determine the correct ring configuration, and proceed toward checkout. He was unable to do so independently because the website's accessibility barriers rendered critical content and interactive controls unusable with his screen reader.

17. During those same visits, Plaintiff also attempted to access the subscription and membership management portions of www.ouraring.com in order to evaluate and subscribe to the Oura Membership service that Defendant requires for access to the Oura Ring's health-monitoring features. Plaintiff attempted to navigate to the Membership Hub, review subscription tiers and pricing, and determine how to activate and manage a Membership subscription. He was unable to do so independently. The same categories of accessibility barriers that blocked his access to the product pages — including form-control labeling failures, interactive elements without accessible names, and inaccessible navigation structures — also rendered the subscription management functions unusable with his screen reader. The accessibility validation report dated March 31, 2026 corroborates Plaintiff's experience: the report identifies form-control labeling failures across 482 pages, missing accessible names on interactive elements, and generic or absent link text throughout the website — barriers that affect the subscription signup, activation, and management flows with the same force as they affect the product purchase flow.

18. The barriers Plaintiff encountered affected his shopping in specific ways. Because product images and image-linked content lacked usable alternative text or used placeholder or filename-based alternative text, Plaintiff could not reliably determine what visual product information was being conveyed on current pages, including image-based product and accessory information. The accessibility validation report identifies alternative-text failures such as alt text that is merely an image filename, alt text containing placeholder terms, and image elements without accessible names. These defects cause screen readers either to ignore the image, announce meaningless filenames, or recite placeholder text instead of useful product information.

19. Plaintiff was also impeded by inaccessible interactive elements needed to select and configure products. The accessibility validation report identifies focusable content placed inside aria-hidden containers, radio-group structure errors on charger and select-size pages, form controls

without accessible names on hundreds of pages, and links or buttons without accessible names. For a blind consumer attempting to choose a ring configuration and proceed with purchase, these defects obstruct basic tasks such as identifying controls, understanding what a field is asking for, selecting an option, and knowing whether an action has been successfully taken.

20. Plaintiff was further unable to navigate the website efficiently because headings, links, and structure were not properly conveyed to assistive technology. The report identifies empty headings, layout tables lacking appropriate semantics, or generic text such as "Learn More" and "Read the article," multiple links on the same page using the same text but leading to different destinations, and links entirely lacking accessible names on more than a thousand pages. These barriers prevented Plaintiff from understanding where links would take him, distinguishing one destination from another, and moving logically through the page to the product information and purchase functions he wanted to use.

21. Plaintiff's experience on the current website was also disrupted by additional accessibility defects that worsened usability and orientation. The accessibility validation report identifies videos on current Gen 4 pages that play longer than five seconds without a way to pause, iframe elements lacking title attributes, page language and directionality errors, and pages where visual labels do not match accessible names. For a blind screen-reader user, those defects can result in unexpected audio interference, meaningless announcements, confusion about page language or control names, and loss of orientation while navigating a commercial transaction.

22. The barriers described above directly interfered with Plaintiff's ability to research and purchase the Oura Ring 4. He could not independently obtain complete product information, confidently determine the correct ring configuration, or proceed through the purchase flow with equal access to the information and functionality available to sighted users. As a result, Plaintiff was deterred from completing the transaction and remains unable to purchase the Oura Ring 4

through Defendant's website unless and until the barriers are remediated The barriers equally prevented Plaintiff from accessing the Membership Hub, evaluating subscription options, and subscribing to the mandatory Oura Membership service — functions that are managed exclusively through the same inaccessible website and are subject to the same WCAG failures identified in the accessibility validation report.

23. Plaintiff's intent to return is concrete and plausible. Defendant currently sells the Oura Ring 4 through the same website, and Plaintiff remains interested in buying that product for his personal health and wellness monitoring. Plaintiff intends to return to www.ouraring.com as soon as it is made accessible so that he can independently review the product pages, use the sizing and selection tools, and complete the purchase. Plaintiff also intends to subscribe to the Oura Membership through the website in order to access the health-monitoring features that are the primary reason for purchasing the ring.

24. Plaintiff is therefore injured in three ways: by the completed loss of the opportunity to purchase the discontinued Gen 3 Horizon, and by the ongoing denial of equal access to the currently sold Gen 4. The first injury supports Plaintiff's damages claims related to the Horizon, and the second supports both damages and forward-looking injunctive relief related to the current website and the Gen 4 product. Plaintiff is injured in a third, compounding way: the mandatory Oura Membership service — without which the Oura Ring cannot perform its core health-monitoring functions — is managed exclusively through the inaccessible website, meaning that even if Plaintiff obtained a ring through an alternative channel, he would be unable to independently activate, manage, or cancel the required subscription.

24. Defendant's website is not a passive informational page. It is an integrated commercial platform that hosts detailed product pages, presents accessory and sizing options,

manages subscriptions and memberships, and directs consumers into the purchase flow for current products.

25. Defendant requires every Oura Ring purchaser to subscribe to the Oura Membership, a paid subscription service priced at $5.99 per month or $69.99 per year, in order to access the health data, insights, and features that constitute the ring's core functionality. Without an active Membership, the $349 Oura Ring is reduced to displaying only basic daily scores and battery information. The following features — which Defendant prominently advertises as the reasons consumers should purchase the Oura Ring — are locked behind the Membership paywall: detailed sleep staging and sleep quality analysis; heart rate variability and resting heart rate trending; body temperature deviation monitoring; blood oxygen (SpO2) measurement and tracking; chronic stress and resilience metrics; daytime stress monitoring; cycle and period prediction; Oura Advisor, Defendant's AI-powered personal health companion; and detailed activity and workout tracking with recovery recommendations. The Oura Membership is not optional in any meaningful sense. Without it, the ring cannot perform the health-monitoring functions for which it is purchased, marketed, and sold. The ring and the Membership are functionally inseparable: the hardware collects the data, but only the Membership — accessible exclusively through the website — permits the consumer to see, analyze, and act upon that data.

26. The Oura Membership is activated, managed, modified, and canceled exclusively through Defendant's website, including the Membership Hub on www.ouraring.com. Consumers must use the website to subscribe to the Membership upon initial ring setup, to change their subscription tier, to update payment information, and to cancel the recurring subscription. There is no alternative offline method to manage the Membership. Because the website is the exclusive gateway to both the Oura Ring product and the mandatory Oura Membership service, Defendant's accessibility barriers do not merely prevent visually impaired consumers from purchasing the ring

— they prevent those consumers from subscribing to, activating, managing, or benefiting from the service that makes the ring functional. Even a visually impaired individual who obtained an Oura Ring through a third-party retailer or as a gift would be unable to independently activate, manage, or cancel the required Membership subscription through Defendant's inaccessible website.

27. The accessibility barriers identified in the March 31, 2026, accessibility validation report extend to the subscription and membership management functions of the website. The report identifies form-control labeling failures on 482 pages — failures that directly affect the subscription signup forms, payment information fields, and account management controls through which consumers must interact to activate, modify, or cancel the Oura Membership. The report further identifies interactive elements without accessible names, inaccessible link text, and missing structural markup across the website, all of which impede a screen reader user's ability to locate, navigate to, and operate the Membership Hub and subscription management pages. These barriers ensure that blind consumers cannot independently perform any of the subscription-related tasks that Defendant has made mandatory for use of its product — from initial Membership activation through ongoing subscription management to cancellation.

28. The accessibility validation report dated March 31, 2026, reflects widespread and current accessibility failures across the website. At Level A, the report identifies 22 issues on 1,294 pages; at Level AA, 6 issues on 1,293 pages; and at Level AAA, 6 issues on 1,312 pages. Among the Level A issues, the report specifically identifies current Gen 4 ring pages for black, brushed silver, gold, rose gold, silver, stealth, ceramic cloud, ceramic midnight, ceramic petal, and ceramic tide in connection with videos that autoplay without a pause mechanism. [file:9]

29. The same report identifies form-control labeling failures on 482 pages, missing row and column semantics on 103 pages, iframe title failures, image elements without accessible names, generic and repetitive link-text failures, links without accessible names on 1,269 pages, invalid page

language on 35 pages, repeated identical link text leading to different destinations on 18 pages, link focus-outline issues on 1,268 pages, and small-target and new-window issues affecting large numbers of pages. These results reflect systemic, not isolated, accessibility barriers.

30. The report also specifically references current store and accessory pages tied to the consumer purchase experience, including store/rings/oura-ring-4 and its various finish pages, as well as charger and select-size pages for accessories. The continued presence of accessibility errors on these product and accessory pages confirms that Defendant has not remediated the shopping flow for blind users and that current purchase-related barriers persist on the live site.

31. Upon information and belief, Defendant knew or should have known that blind users rely on semantic structure, accessible labels, meaningful alternative text, keyboard operability, and screen-reader-compatible controls to use an e-commerce website. Yet Defendant has continued to operate www.ouraring.com with barriers that impair blind users' access to product information and purchasing functionality.

32. Defendant's failure to correct barriers previously encountered by Plaintiff, together with the current March 31, 2026, accessibility report showing widespread failures on current pages, demonstrates an ongoing pattern of non-remediation. The product offering has changed from the Gen 3 Horizon to the Gen 4, but the inaccessibility remains. Defendant's indifference is compounded by the fact that it has made a paid subscription service mandatory to use its product while simultaneously maintaining the website — the exclusive gateway to that service — in a state that is unusable by blind and visually impaired consumers.

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this action on behalf of himself and all others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3), consisting of all legally blind individuals in the United States who attempted to access

www.ouraring.com and were denied equal access to Defendant's products, services, offerings, and support due to digital accessibility barriers during the relevant statutory period.

31. Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3), consisting of all legally blind individuals residing in New York State and/or New York City who attempted to access www.ouraring.com and were similarly denied equal access due to the same systemic barriers.

32. Common questions of law and fact exist among the Class and Subclass, including whether Defendant's website is a place or service of public accommodation, whether the website's barriers deny blind users full and equal access, whether Defendant failed to make reasonable modifications and provide auxiliary aids and services, and whether injunctive, declaratory, statutory, and compensatory relief is warranted. Additional common questions include whether Defendant's accessibility barriers deny visually impaired consumers access to the mandatory Oura Membership service required to use Defendant's products, and whether visually impaired consumers who obtained an Oura Ring through third-party channels are independently denied access to the Membership service due to the inaccessibility of www.ouraring.com.

33. Plaintiff's claims are typical of those of the Class because, like other blind consumers, he relies on screen-reading software and encountered inaccessible product information, unlabeled controls, unusable links, and inaccessible purchase functionality on Defendant's website.

34. Plaintiff will fairly and adequately represent the interests of the Class. He has retained counsel experienced in disability-rights and complex litigation and has no interests antagonistic to the Class.

35. The mandatory Oura Membership service amplifies the class-wide nature of the harm. Because every Oura Ring purchaser must subscribe to the Membership through the website, and because the website is uniformly inaccessible to all visually impaired users, the denial of access

to the Membership service is universal, automatic, and requires no individualized inquiry. The website's inaccessibility functions as a categorical barrier that excludes every visually impaired consumer from both the product and the mandatory service, regardless of how or where the consumer obtained the ring.

## FIRST CAUSE OF ACTION

**Violations of Title III of the Americans with Disabilities Act**
**(42 U.S.C. § 12182 *et seq.*)**

36. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

37. Title III of the ADA prohibits discrimination against individuals with disabilities in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation. [file:10]

38. Defendant's website is a service, privilege, and advantage of Defendant's commercial operations and must therefore be accessible to blind and visually impaired users on equal terms.

39. Defendant denied Plaintiff full and equal access to its goods and services by maintaining a website with barriers that prevented him from independently researching and purchasing the Gen 3 Horizon before it was discontinued, and that continue to prevent him from independently researching and purchasing the currently sold Gen 4. Defendant also denied Plaintiff access to the mandatory Oura Membership service — a "service" within the meaning of 42 U.S.C. § 12182(a) — by maintaining the Membership Hub and subscription management functions on an inaccessible website. By requiring consumers to subscribe to the Membership through an inaccessible website, Defendant conditions access to its services on the ability to navigate a platform that excludes visually impaired individuals.

40. The barriers identified in the current accessibility validation report—including inaccessible images, inaccessible links, inaccessible forms, inaccessible structural markup,

inaccessible embedded content, and inaccessible purchase-related pages—constitute ongoing violations of the ADA. The inaccessibility of the Membership Hub and subscription management functions constitutes an additional ongoing violation.

41. Unless enjoined, Defendant will continue to deny Plaintiff and similarly situated blind individuals equal access to its website, current products, and mandatory subscription service.

**SECOND CAUSE OF ACTION**
**Violations of the New York State Human Rights Law**

42. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

43. Defendant owns, leases, operates, controls, and/or maintains a place of public accommodation and has denied Plaintiff, because of his disability, the accommodations, advantages, facilities, and privileges thereof by operating an inaccessible website through which its products are marketed and sold. The mandatory Oura Membership service constitutes an "accommodation," "advantage," and "privilege" offered through www.ouraring.com that Defendant denies to visually impaired consumers by maintaining the subscription management functions on an inaccessible website.

44. Defendant's operation of an inaccessible website caused Plaintiff to lose the opportunity to purchase the Gen 3 Horizon and continues to deny him equal access to the Gen 4, the mandatory Oura Membership service, and related services.

**THIRD CAUSE OF ACTION**
**Violations of the New York Civil Rights Law**

45. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

46. By operating a commercial website that does not provide blind consumers full and equal access to the accommodations, advantages, facilities, and privileges made available to the

public, Defendant has violated the New York Civil Rights Law. The mandatory Oura Membership service — which Defendant requires for access to the ring's health-monitoring features and manages exclusively through the inaccessible website — constitutes a privilege and advantage that Defendant denies to blind consumers.

47. Defendant's discriminatory conduct was ongoing, willful, and harmful to Plaintiff and the proposed class and subclass.

## FOURTH CAUSE OF ACTION
## Violations of the New York City Human Rights Law

48. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

49. Defendant is subject to the NYCHRL because it offers goods and services to consumers in New York City through the website it owns and operates.

50. Defendant denied Plaintiff the full and equal enjoyment of its services, facilities, privileges, and advantages by refusing to provide an accessible website and reasonable accommodation to blind consumers. The mandatory Oura Membership service constitutes a "service" that Defendant denies to visually impaired consumers by maintaining the exclusive means of subscribing to and managing the Membership on an inaccessible website.

51. Defendant's conduct caused Plaintiff both retrospective harm related to the discontinued Horizon and ongoing harm related to the currently sold Gen 4. [file:9][file:10] Plaintiff also suffers ongoing harm from the inaccessibility of the mandatory Oura Membership service that Defendant requires for use of its products.

## FIFTH CAUSE OF ACTION
## Declaratory Relief

52. Plaintiff repeats and realleges the foregoing allegations as if fully set forth herein.

53. An actual controversy exists between the parties because Plaintiff contends, and is informed and believes Defendant denies, that Defendant's website contains barriers denying blind

consumers full and equal access to the products, services, and facilities offered through www.ouraring.com.

54. A judicial declaration is necessary and appropriate so that the parties may know their respective rights and obligations and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

- A declaration that Defendant's website is inaccessible to blind and visually impaired users and violates applicable disability-access laws;
- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make www.ouraring.com fully accessible to and independently usable by blind and visually impaired individuals, including the current Oura Ring 4 product pages, sizing and selection tools, checkout flow, the Oura Membership Hub, subscription activation, subscription management, and payment processing functions;
- An order requiring Defendant to adopt policies, training, testing, and monitoring reasonably calculated to cause the website to become and remain accessible;
- A declaration that Defendant's practice of conditioning access to the mandatory Oura Membership service on the use of an inaccessible website constitutes discrimination against visually impaired consumers in violation of the ADA, NYSHRL, NY Civil Rights Law, and NYCHRL;
- An order requiring Defendant to provide visually impaired consumers with an accessible alternative means of subscribing to, managing, and canceling the Oura Membership service until such time as www.ouraring.com achieves and maintains full accessibility compliance;

- An award of statutory, compensatory, and other damages to Plaintiff and class members to the fullest extent permitted by law, including damages arising from Plaintiff's lost opportunity to purchase the discontinued Oura Ring Gen 3 Horizon;
- An order certifying the proposed Class and Subclass, appointing Plaintiff as Class Representative, and appointing his counsel as Class Counsel;
- An award of attorneys' fees, costs, and litigation expenses; and
- Such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
April 29, 2026

Respectfully submitted,
/s/*Robert Schonfeld*
Robert Schonfeld, Esq.
JOSEPH & NORINSBERG LLC
825 Third Avenue, Suite 2100
New York, New York 10022
212-227-5700
rschonfeld@employeejustice.com
Counsel for Plaintiff